UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:10-CV-00243-FL

| | |
|---|---|
| MICHAEL E. THRASH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>DARE COUNTY AIRPORT AUTHORITY, )<br>)<br>Defendant. )<br>_____ | **MEMORANDUM &<br>RECOMMENDATION** |

This cause comes before the Court upon pro se Plaintiff's motions to appoint counsel [DE-24] and for summary judgment [DE-25] and Defendant's motions to dismiss and for judgment on the pleadings [DE-18]. The parties have filed responses and replies to the various motions, along with memoranda in support of their positions. [DE-19, 26, 27, 28, 33, 34, 35, 36]. Accordingly, the motions are ripe for review. Pursuant to 28 U.S.C. § 636(b)(1), the motions were referred to the undersigned for entry of a memorandum and recommendation. [DE-38]. For reasons that follow, it is hereby RECOMMENDED that Plaintiff's motions to appoint counsel [DE-24] and for summary judgment [DE-25] be DENIED, that Defendant's motion to dismiss be DENIED, but that Defendant's motion for judgment on the pleadings [DE-18] be GRANTED.

**I.    Factual Background**

Plaintiff, an inmate in the custody of the North Carolina Department of Correction since 1998, is the son of Thelma Meekins Thrash. Ms. Thrash died on May 22, 2007, naming Plaintiff as the sole beneficiary of her will. [DE-1, Ex. B-1]. Ms. Thrash's daughter, Ella Mae Simmons,

served as the executrix of Ms. Thrash's estate. [DE-1, Ex. C]. Ms. Simmons also holds power of attorney for Plaintiff. [DE-1-2, p.16]. At the time of her death, Ms. Thrash owned real property and a residence located at 216 Etheridge Road in Manteo, North Carolina ("the property"). Plaintiff intended to reside at the residence following his release from incarceration, in accordance with Ms. Thrash's expressed purpose in bequeathing him the property. [DE-1, Ex. F-1].

On July 26, 2007, the North Carolina Department of Health and Human Services ("DHHS"), Division of Medical Assistance, notified Ms. Simmons that DHHS intended to file a claim against the estate in the amount of $151,592.16 for the recovery of medical expenses paid by the agency through its Medicaid division on behalf of Ms. Thrash. [DE-1, Exs. B-1,2]. Ms. Simmons retained attorney James R. Gilreath to assist her in handling the claim by DHHS against the estate, along with other matters. [DE-1, Ex. F-5]. Through counsel, Ms. Simmons requested a hardship exemption from DHHS on behalf of Plaintiff, but her request was denied. [DE-1, Exs. F-4,5].

Prior to her death, Ms. Thrash entered into a right of first refusal with Defendant, dated December 15, 1994 and recorded in Book 970, Page 491, Dare County Public Registry, under which Ms. Thrash granted Defendant a right of first refusal to purchase the property. [DE-15-1, p.1; DE-15-2, pp.3-7; DE-15-6, p.2]. By letter dated July 11, 2008, counsel for Ms. Simmons as executrix of Ms. Thrash's estate notified Defendant that the estate needed to sell the property to satisfy a Medicaid lien. [DE-15-5]. On August 13, 2008, Ms. Simmons then offered to Defendant the opportunity to purchase the subject property. [DE-15-1, p.1]. Defendant declined to pursue the purchase of this property in 2008 "in order to pursue the acquisition of other property deemed of greater significance to [Defendant's] goals and mission, which other

property [Defendant] subsequently purchased in 2009." *Id.* Defendant informed the estate of this decision on October 30, 2008. [DE-15-4].

On May 27, 2009, the estate again contacted Defendant to inquire whether it was interested in purchasing the property. [DE-15-3]. Ms. Simmons thereafter agreed to sell the property to David P. Farrow for $45,000. The offer to purchase and contract ("the Farrow contract") was signed December 1, 2009. [DE-15-2, pp.8-14]. Pursuant to the terms of Defendant's right of first refusal granted by Ms. Thrash [DE-15-2, p.4], the estate submitted to Defendant a copy of the Farrow contract. [DE-15-2, p.1]. Defendant elected to exercise its right of first refusal by agreeing to purchase the property pursuant to the terms of the Farrow contract. [DE-15-1, p.1].

A special proceeding titled "In the Matter of the Estate of Thelma Meekins Thrash, Deceased" (the "special proceeding") was then commenced in the superior court, Dare County, North Carolina, before the clerk to facilitate the sale of the property by the estate to Defendant. [DE-15-6]. Upon review of the pleadings, the court file, and witness testimony, the court found that the proposed contract with Defendant was in the best interest of the estate. [DE-15-6, p.3]. In its findings, the court noted that "after lengthy negotiation" the state of North Carolina had "agreed to release the Medicaid lien in exchange for a sale price of $45,000.00 for the Thrash property" and that "even at the appraised value the Medicaid lien would consume all proceeds from the lot, at tax value, or appraised value." [DE-15-6, p.3]. Accordingly, by order entered in the special proceeding on March 31, 2010, the court ordered Ms. Simmons, as executrix of the estate of Ms. Thrash, to sell the property to Defendant for the sum of $45,000. [DE-15-6]. Ms. Simmons sold the property at 216 Etheridge Road to Defendant on May 17, 2010. [DE-1, Ex. A-

2]. Ms. Simmons signed the contract to sell the property on behalf of both the estate and Plaintiff. [DE-1-3, p.23].

Proceeding pro se, Plaintiff filed a complaint against Defendant on December 6, 2010, alleging that his property was illegally sold without his consent in violation of 42 U.S.C. § 1983. [DE-1]. Plaintiff also named DHHS, Ms. Simmons, James Gilreath, and David Farrow as defendants to the complaint. According to Plaintiff, Defendant had long coveted the property and conspired with the other named defendants to steal it from him.

Upon frivolity review, the undersigned recommended that Plaintiff's complaint be dismissed as frivolous. [DE-5]. The Court adopted the memorandum and recommendation as to all defendants except present Defendant. [DE-9]. Defendant now moves this Court to dismiss Plaintiff's complaint for lack of subject matter jurisdiction or, alternatively, to grant Defendant judgment on the pleadings. [DE-18]. Plaintiff seeks summary judgment and requests appointment of counsel. [DE-24, DE-25]. These motions are addressed in turn.

## II. Plaintiff's Motions

### A. Motion to Appoint Counsel, DE-24

Plaintiff requests court-appointed counsel. There is no constitutional right to counsel in civil cases, however, and courts should exercise their discretion to appoint counsel for pro se civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by* Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989); *see also* Gordon v. Leeke, 574 F.2d 1147,

1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him.").

Here, Plaintiff's action is not complex, and he has demonstrated through the detail of his filings that he is capable of proceeding pro se. As such, this case is not one in which exceptional circumstances merit appointment of counsel. *See, e.g.*, Marshall v. Perdue, No. 5:11-CT-3068-F, 2011 U.S. Dist. LEXIS 75052, *1-2 (E.D.N.C. July 11, 2011) (denying the pro se plaintiffs' motion to appoint counsel); Scott v. Keller, No. 5:11-CT-3009-FL, 2011 U.S. Dist. LEXIS 73494, *1-2 (E.D.N.C. July 7, 2011) (same); RE/MAX, LLC v. Sensational Realty, Inc., No. 5:10-CV-483-FL, 2011 U.S. Dist. LEXIS 39253, *3 (E.D.N.C. Apr. 11, 2011) (denying the pro se defendants' motion to appoint counsel). It is therefore recommended that Plaintiff's motion to appoint counsel [DE-24] be denied.

### B. Motion for Summary Judgment, DE-25

Plaintiff also requests summary judgment in his favor. Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment must come forward and demonstrate the absence of a genuine issue of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in a light most favorable to the non-moving party. *See* Anderson, 477 U.S. at 255. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.

*See id.* at 250. The moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-movant's evidence is insufficient to establish his claim. *See* Celotex Corp., 477 U.S. at 331. A trial judge faced with a summary judgment motion "must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at 252.

Here, Defendant has filed a verified answer, along with six attached exhibits, denying all of Plaintiff's allegations of conspiracy and fraud. [DE-15]. The attached exhibits directly refute Plaintiff's allegations that the property was illegally sold. The facts of the instant case, therefore, are clearly in dispute. Accordingly, Plaintiff has failed to carry his burden of showing the absence of a genuine issue of material fact or that he is entitled to judgment as a matter of law. It is recommended that Plaintiff's motion for summary judgment [DE-25] be denied.

### III. Defendant's Motions

#### A. Motion to Dismiss, DE-18

Defendant moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendant contends this Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine[1] precludes a party who has lost in state court from seeking what in substance would be appellate review of the state judgment in a United States district court. Willner v. Frey, 243 Fed. Appx. 744, 745-46 (4th Cir. 2007) (per curiam) (unpublished). "District courts cannot review final state court judgments because Congress has vested appellate jurisdiction over state court

---

[1] The *Rooker-Feldman* doctrine is named after two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

6

decisions with the United States Supreme Court." *Id.* at 746 (citing 28 U.S.C. § 1257(a)). A party seeking review of a state court decision must first appeal to the highest court of the state and then seek a writ of certiorari from the United States Supreme Court. The *Rooker-Feldman* doctrine thereby prevents losers in state court from bypassing the appeal process by seeking review in federal district court. *Id.*

The *Rooker-Feldman* doctrine is narrow and applies only where it is shown that "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of 'injuries caused by state-court judgments;' (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff 'invit[es] district court review and rejection of those judgments.'" *Id.* (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). The doctrine does not apply when the plaintiff alleges a constitutional violation independent of the injury caused by the state court judgment. *Id.* As the Fourth Circuit has explained, "the key inquiry is not whether the state court ruled on the precise issue raised in federal court, but whether the 'state-court loser who files suit in federal court seeks redress for an injury caused by the state-court decision itself.'" *Id.* at 747 (quoting Davani v. Va. DOT, 434 F.3d 712, 718 (4th Cir. 2006)).

Defendant argues that the four conditions required for application of the *Rooker-Feldman* doctrine are present in the instant case. First, Plaintiff opposed the sale of the property in state court but lost. Plaintiff was a party to the special proceeding in superior court, Dare County. He was served and filed an answer contesting the sale. The state court reviewed the pleadings, the estate file, and the testimony of witnesses, and concluded as a matter of law that it was nevertheless in the best interest of the estate to sell the property to Defendant for $45,000 to pay

7

off the lien held by DHHS. [DE-15-6]. Accordingly, the state court authorized and ordered the sale of the property to Defendant.

Second, Plaintiff complains about injuries caused by the state court order authorizing the sale of the property to Defendant. Because Plaintiff contends the property was illegally sold and that such sale violated his constitutional rights, Defendant argues his challenge is essentially a challenge to the state court order that authorized the sale. *See* Willner, 243 Fed. Appx. at 747 (noting that if a third party's actions are the product of a state court judgment, then the plaintiff's challenge to those actions are in fact a challenge to the judgment itself).

Third, the state court's order became final no later than April 30, 2010, after allowing thirty days for an appeal of the order after its entry on March 31, 2010. *See* N.C. R. App. P. 3(c). Plaintiff filed the instant complaint on December 6, 2010. [DE-1]. Defendant contends the third prong of the *Rooker-Feldman* doctrine is therefore met.

Fourth, Defendant asserts that Plaintiff's complaint necessarily invites this Court to review and reject the order entered by the state court. Defendant argues that "to grant the relief sought by Plaintiff in this lawsuit, this Court would be required either to determine that the [state court] Order was erroneously entered or this Court must take action that would render the Order ineffectual." [DE-19, p.8]. Defendant contends the four prongs of the *Rooker-Feldman* doctrine are thereby met and that this Court therefore lacks subject matter jurisdiction over the instant dispute.

However, the undersigned is not persuaded that the *Rooker-Feldman* doctrine is entirely applicable under the present facts. By his complaint, Plaintiff seeks to recover monetary damages against Defendant for its role in an alleged conspiracy to create a fictitious lien that ultimately deprived Plaintiff of his property. While Defendant correctly notes that Plaintiff

8

contested the sale of the property in state court by filing an answer in opposition, the purpose of the state court proceeding was simply to determine whether the sale of the property was in the best interest of the estate—not whether the lien claim asserted by DHHS was fraudulent. Thus, the state court has not considered Plaintiff's present claims of conspiracy and fraud, and it therefore cannot be said that Plaintiff "lost" in state court. Further, reviewing Plaintiff's claims would not require this Court to overturn or challenge the state court's decision that sale of the property was in the best interests of the estate. Plaintiff's success on the merits of his conspiracy claim would not undermine the state court's decision. Thus, it appears that Plaintiff's asserted constitutional violations are independent of the injury caused by the state court judgment. Because the *Rooker-Feldman* doctrine does not preclude review under these circumstances, the undersigned recommends that Defendant's motion to dismiss be DENIED.

### B. Motion for Judgment on the Pleadings, DE-18

Alternatively, Defendant seeks judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) allows a party to move for judgment on the pleadings, "[a]fter the pleadings are closed--but early enough not to delay trial." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, the court applies "the same standard" as for a motion to dismiss made pursuant to Rule 12(b)(6). Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). To survive a motion to dismiss, a plaintiff must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The facts alleged must "raise a right to relief above the speculative level," *id.* at 555, and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff

9

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with" a defendant's liability, Twombly, 550 U.S. at 557, fail to nudge claims "across the line from conceivable to plausible." Id. at 570.

A court may consider matters of public record such as documents from prior state court proceedings in conjunction with a motion to dismiss without converting the motion to one for summary judgment. Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009). Moreover, a copy of a written instrument attached as an exhibit to a pleading is part of the pleading for all purposes, and the court may properly consider the pleadings and any attachments to the pleadings when ruling on a Rule 12(c) motion to dismiss. Fed. R. Civ. P. 10(c); Demetry v. Lasko Products, Inc., 284 Fed. Appx. 14, 15 (4th Cir. 2008) (unpublished); Preston v. Leake, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009).

Here, Plaintiff alleges Defendant conspired with DHHS to create a fictitious lien against his mother's estate in an effort to obtain the property. According to Plaintiff, Defendant had long coveted the property, but Ms. Thrash refused to consider selling it during her lifetime and forbade her children from doing so. [DE-1, p.10].

10

Although Plaintiff alleges that Defendant conspired with DHHS to invent a "phantom debt" [DE-1, p.13], his complaint utterly lacks any information detailing the existence of the alleged conspiracy. For example, he does not identify any individuals involved in the conspiracy, their communications or relationships, or the means by which they conspired. He does not explain by what means or method the fictitious lien was created, or the parties' roles in its creation. In short, Plaintiff's bare assertions, devoid of further factual enhancement, do not cross the line between possibility and plausibility of entitlement to relief. Rather, Plaintiff simply asserts a conspiracy existed but fails to propound any factual allegations about its existence.

Moreover, Plaintiff's allegations are directly contrary to the pleadings and exhibits of record. None of the attached exhibits shows any communication or contact between Defendant and DHHS. Notably, the exhibits demonstrate that Ms. Thrash herself granted a right of first refusal to Defendant regarding the sale of the property, contrary to Plaintiff's allegations regarding his mother's intentions for the sale of the property. In addition, the evidence shows that Ms. Simmons through counsel initiated contact with Defendant on three separate occasions in an attempt to sell the property to Defendant. This evidence directly contradicts Plaintiff's allegations that Defendant concocted a scheme to acquire the property from Ms. Simmons. Contrary to Plaintiff's allegation that Defendant decided to obtain the Property "by any means necessary" [DE-1, p.10], the exhibits demonstrate that Defendant declined to purchase the property when originally offered by Ms. Simmons. Defendant decided to exercise its right of first refusal and purchase the property only after Ms. Simmons entered into an offer to purchase and contract with David Farrow, approximately sixteen months later. Ms. Simmons was required to offer Defendant the opportunity to purchase the property pursuant to the terms and

11

Case 7:10-cv-00243-FL   Document 39   Filed 07/25/11   Page 11 of 12

conditions of the Farrow contract based on the right of first refusal previously granted by Ms. Thrash to Defendant. Finally, the sale of the property to Defendant was authorized and ordered by a North Carolina state court through the special proceeding to which Plaintiff was a party.

Plaintiff's complaint is insufficient as a matter of law and should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Ashcroft</u>, 129 S.Ct. at 1950. The undersigned therefore recommends that Defendant's motion for judgment on the pleadings be granted and that Plaintiff's claims be dismissed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### IV. **Conclusion**

For the foregoing reasons, the undersigned RECOMMENDS that Plaintiff's motions to appoint counsel [DE-24] and for summary judgment [DE-25] be DENIED, that Defendant's motion to dismiss be DENIED, but that Defendant's motion for judgment on the pleadings [DE-18] be GRANTED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Monday, July 25, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE